STEVEN KALAR
Federal Public Defender
SOPHIA WHITING
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, California 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Sophia_Whiting@fd.org

Counsel for Defendant LAINEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 19-398 WHA |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| v. | |
| WILMAN LAINEZ, | |
| a.k.a. Wilmer Lainez | |
| Defendant. | |

On October 29, 2019, Wilman Lainez accepted responsibility for selling fentanyl, a very serious federally controlled substance. In light of Mr. Lainez's ineligibility for treatment for his own drug addiction and his inevitable deportation, to avoid unwarranted sentencing disparities between similarly situated defendants, Mr. Lainez respectfully requests that the Court vary downward under the factors of 18 U.S.C. § 3553(a) from the U.S. Sentencing Guideline range of 10 to 16 months and impose upon him a sentence of six months custody and three years of supervised release.

## BACKGROUND

Wilman Lainez was born on October 27, 1985, and grew up in a poverty-stricken rural village outside of Tegucigalpa, Honduras. *See* PSR ¶¶ 45-46. After attending school through only age nine, Mr. Lainez began working in the fields to support his family. *See id.* ¶ 46. The farming fields were the only consistent work available and the pay was meager at approximately $2 per day. *See id.* In light of these conditions, at just 16 years old, Mr. Lainez decided to make the dangerous journey north, hoping to be able to provide some financial support to his family. *See id.* ¶ 47.

With very little education or parental guidance, Mr. Lainez started abusing alcohol and drugs at a young age. He began drinking at just 14 years old, and smoking marijuana at 16. *Id.* ¶ 54. In the two decades since, he also developed problems with cocaine and methamphetamine. *Id.* He has never received treatment for his addictions. *Id.* He additionally acknowledges past depressive episodes, and his wife has expressed concerns about his mental health. *Id.* ¶ 53.

Despite his substance abuse, when Mr. Lainez arrived in the United States as a juvenile, he secured jobs on construction sites. *See id.* ¶ 47. However, because of his age and status, employers often took advantage of Mr. Lainez and he struggled to earn a livable wage. Without an education, steady income, stable living situation, or many contacts in the United States, Mr. Lainez began supporting his drug habit by also selling drugs. Despite living a mostly transient life, Mr. Lainez still managed to send some money home to his family in Honduras. *Id.*

In his late teens and early twenties, Mr. Lainez was caught selling drugs and deported repeatedly. *See id.* ¶¶ 27-30; 47. Mr. Lainez's most recent conviction and deportation are both from nearly a decade ago. *See id.* ¶¶ 31; 47. He has no violent prior arrests or convictions. *See id.* ¶¶ 27-43.

On June 21, 2019, Mr. Lainez was arrested along with two co-defendants. Since he happened to be arrested after the government began their Federal Initiative for The Tenderloin ("FITT"), on August 22, 2019, the government filed a federal indictment charging Mr. Lainez and two co-defendants with drug distribution.

**DISCUSSION**

**A.     The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))**

Mr. Lainez agrees with the government and U.S. Probation that the applicable U.S. Sentencing Guideline range is 10 to 16 months, based upon Offense Level 10 and Criminal History Category III, in Zone C of the Sentencing Table. Since the applicable guideline range is in Zone C of the Sentencing Table, the Court may satisfy the minimum term by a sentence of imprisonment that includes a term of supervised release with a condition of community confinement or home detention, provided at least one-half is satisfied by imprisonment. U.S.S.G. § 5C1.1(d)(2). However, since Mr. Lainez does not have permission to be in this country, he is not eligible for any of those preferable alternatives to imprisonment expressly recognized in the guidelines.

Instead, under the factors of 18 U.S.C. § 3553(a), Mr. Lainez respectfully requests that the Court vary downward from the low end of the advisory guideline range to a sentence of six months, to avoid unwarranted sentencing disparities among similarly situated defendants. Although the court must remain mindful of the guideline recommendation, the range established by the Sentencing Guidelines is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. A sentence of six months custody and three years of supervised release better aligns with the goals and factors of section 3553(a), for the reasons below.

**I. Deterrence and Public Protection is Accomplished with a Sentence of Six Months (18 U.S.C. § 3553(a)(2))**

Mr. Lainez respectfully contends that the sentencing guidelines of 10-16 months do not take into account the ultimate deterrence and public protection in this case—immigration detention, deportation, supervised release, and the threat of a new federal case if he returns.

After six months federal custody, followed by immigration detention, deportation, and a term of supervised release, Mr. Lainez will be deterred from attempting to make the arduous journey north again to face what he knows will be even more severe consequences. Mr. Lainez knows that an illegal re-entry after this deportation would be a new federal crime and, if he returns within his supervised release term, it would additionally be a violation. He fully understands that the consequences for such a decision.

The requested sentence will also protect the public from any further crimes by Mr. Lainez because he will be deported and remain in Honduras. Mr. Lainez was last deported a decade ago. Since then, he is becoming more aware of his age and his responsibilities. He no longer wants to take the risks associated with travelling back into the United States. Mr. Lainez has made plans to stay in Honduras once deported. The last time Mr. Lainez was deported, he was in his mid-twenties. He is now a 34-year-old man who is tired of taking risks. He will move to the rural village where his entire family lives, rather than return to the dangerous city of Tegucigalpa.[1] He will work in the fields and construction with his father. He recognizes that his father is getting older, and he wants to be there to take care of him and the rest of his family. He is the only son, so they will depend on him to take over for his father. He also wants to be there for his daughters and his one living grandmother. He regrets not being around when his other grandparents passed. His wife plans to visit him in Honduras so that he can spend time with their three young children.

Additional time in custody is greater than necessary to deter Mr. Lainez and protect the public.

---

[1] Tegucigalpa, the capital city, has become one of the most violent cities in the world. *See, e.g.*, Central America Refugee Crisis, UNITED NATIONS REFUGEE AGENCY (available at https://www.unrefugees.org/emergencies/central-america).

3

## II. A Sentence of Six Months Custody Would Avoid Unwarranted Sentencing Disparities Among Similarly Situated Defendants (18 U.S.C. § 3553(a)(6))

Since none of the preferable alternatives to imprisonment are available for Mr. Lainez, the Court should instead vary downward to a term of imprisonment of six months.

Alternatives to imprisonment, like drug treatment, are especially important for defendants whose crimes were driven by untreated addiction. He has been asking for drug treatment since he was at least 21-years-old. Mr. Lainez should not receive a custodial sentence that is longer than most residential treatment programs, simply because he is ineligible for them based on his foreign nationality.

Unlike Mr. Lainez, Mr. Lainez's co-defendants are U.S. citizens. They were released almost immediately after their initial appearances, and have been out of custody since. They have since pursued drug treatment as a potential alternative to a custodial sentence. Mr. Lainez, on the other hand, has already been detained at Santa Rita for 4.5 months. Unlike his co-defendants and other similarly situated defendants, he is not eligible for drug treatment programs, probation, or early release to a halfway house. Also unlike his co-defendants and other similarly situated defendants, at the end of his custodial sentence, Mr. Lainez will be detained by Immigration and Customs Enforcement for an unknown amount of time and then deported to Honduras. Mr. Lainez should not be disproportionately punished because of his ineligibility for alternatives to incarceration based on his nationality.

## CONCLUSION

For the aforementioned reasons, the Court should sentence Mr. Lainez to a term of six months imprisonment.

|   |   |
|---|---|
| Dated: January 7, 2020 | Respectfully submitted,<br><br>STEVEN KALAR<br>Federal Public Defender<br>Northern District of California<br><br>/S<br>SOPHIA WHITING<br>Assistant Federal Public Defender |

5